Robert Mackey (SBN 125961)
*bobmackeyesq@aol.com*
**LAW OFFICES OF ROBERT MACKEY**
16320 Murphy Road
Sonora, CA 95370
Tel: (412) 370-9110

Jane Manwarring, Esq.*
*jmanwarring@classlawdc.com*
**MIGLIACCIO & RATHOD, LLP**
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520

* *pro hac vice anticipated*

*Attorney for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **HENRY DOMINGUEZ**, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> **WOFLOW INC.**, <br><br> Defendant. | **Case No.:** <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

PLAINTIFF Henry Dominguez ("Plaintiff") brings this action on behalf of himself and all other similarly situated individuals, hereby alleges the following against Woflow Inc. ("Woflow" or "Defendant"). Based upon personal knowledge, information, belief, and investigation of counsel, Plaintiff specifically alleges as follows:

## INTRODUCTION

1.    This class action arises out of Defendant's failures to properly secure, safeguard, encrypt, and/or timely and adequately destroy Plaintiff's and Class members' sensitive personally identifiable information ("PII" or "Private Information") that it had acquired and stored for its business purposes.

2.      Defendant's data security failures allowed a targeted cyberattack to take place in or around March 2026, which compromised Defendant's network (the "Data Breach") that contained Private Information of Plaintiff and Class members.[1] Upon information and belief, cybercriminals intentionally targeted Defendant for the highly sensitive Private Information it stores on its computer network, attacked the insufficiently secured network, and then had unfettered access to Defendant's network, exfiltrating highly sensitive PII. As a result, the Private Information of Plaintiff and Class members remains in the hands of cybercriminals.

3.      Upon information and belief, the Private Information involved in the Data Breach included sensitive Private Information including full names, street addresses, email addresses, phone numbers, and birthdates.[2] However, because Defendant has not released any statements or notices to affected individuals regarding the Data Breach, Plaintiff and Class members cannot be sure exactly what Private Information of theirs was compromised in the Breach. The Private Information stolen in the Data Breach could additionally include, among other things, Social Security numbers, driver's license numbers, financial account details, and more.

4.      The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect individuals' Private Information with which it was entrusted for purchases and employment.

5.      Plaintiff brings this class action lawsuit on behalf of himself and all persons who are similarly situated to address Defendant's inadequate safeguarding of Class members' Private Information that it collected and maintained, for failing to promptly detect the cyberattack, and for failing to provide timely and adequate notice to Plaintiff and other Class members that their information had been subject to the unauthorized access and exfiltration by cybercriminals.

6.      Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was maintained on Defendant's computer network in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the Data Breach and potential for

---

[1] *[SHINYHUNTERS] – Ransomware Victim: Woflow, Inc[.]*, REDPACKET SECURITY (Mar. 3, 2026), https://www.redpacketsecurity.com/shinyhunters-ransomware-victim-woflow-inc/.
[2] *Woflow, Inc. Breach*, DATABREACH, https://databreach.com/breach/woflow-2026 (last visited Apr. 7, 2026).

improper disclosure of Plaintiff's and Class members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

7. Defendant disregarded the rights of Plaintiff and Class members by, inter alia, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to disclose that it did not have adequately robust computer systems and security practices to safeguard Plaintiff's and Class members' Private Information; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class members with prompt and full notice of the Data Breach.

8. In addition, Defendant failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant properly monitored its property, it would have discovered the intrusion sooner rather than allowing cybercriminals unimpeded access to the PII of Plaintiff and Class members for an undisclosed amount of time.

9. Plaintiff's and Class members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of cybercriminals, and their Private Information has been posted, sold, or is at imminent risk of being sold on the dark web.

10. Armed with the Private Information accessed in the Data Breach, cybercriminals can commit a variety of crimes including, e.g., opening new financial accounts in Class members' names, taking out loans in Class members' names, using Class members' information to obtain government benefits, filing fraudulent tax returns using Class members' information, filing false medical claims using Class members' information, obtaining driver's licenses in Class members' names but with another person's photograph, and giving false information to police during an arrest.

11. As a result of the Data Breach, Plaintiff and Class members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class members must now and for years into the future closely monitor their financial accounts to guard against identity theft.

12.     Plaintiff and Class members have or soon may incur out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

14.     Accordingly, Plaintiff brings this action against Defendant seeking redress for its unlawful conduct, and asserting claims for: (i) negligence, (ii) Invasion of Privacy – Public Disclosure of Private Facts, and California Constitutional Right to Privacy, (iii) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.; and (iv) violation of California Consumer Privacy Act, Cal. Civ. Code §§ 1798.80, et seq.

15.     Plaintiff seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief, including improvements to Defendant's data security systems, future annual audits, as well as long-term and adequate credit monitoring services funded by Defendant.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the putative Class, and at least one member of the Class is a citizen of a state different from Defendant.

17.     The Court has general personal jurisdiction over Defendant because, personally or through its agents, Defendant operates, conducts, engages in, or carries on a business in California; it maintains its headquarters in California; and it committed tortious acts in California.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is the district within which Defendant has the most significant contacts and because a substantial portion of the acts and omissions that give rise to the claims herein occurred in this district.

CLASS ACTION COMPLAINT

**PARTIES**

19.     Plaintiff Henry Dominguez is and was at all times relevant to the Complaint a resident of the State of California, residing in the Hemet. Plaintiff Dominguez is a Walmart+ account holder. Walmart is one of Defendant's clients.[3]

20.     Defendant Woflow Inc. is a corporation formed in California, with its principal place of business located at 45 Belden Place, Suite 300, San Francisco, California 94104. Defendant may be served to Jordan Nemrow at the same address.

**FACTUAL BACKGROUND**

21.     Woflow is a technology company that provides artificial intelligence ("AI") tools and services designed to support business operations, including software that allows organizations to build, train, and deploy AI-driven agents.[4] Woflow's AI platform enables companies to automate workflows and perform operational tasks using AI-driven systems.[5] Among other large companies, Walmart uses Woflow's platform.[6]

22.     In providing these services, Defendant processes and interacts with business information and operational data belonging to its clients, such as Walmart, and their users, in order to support automated workflows and AI-driven tasks within client organizations.

23.     In the ordinary course of providing its platform and services, Defendant integrates with and operates within its customers' and/or third-party systems and applications, which store and process sensitive personal information. As a result, Defendant's services access, process, store, and/or interact with PII belonging to customers and end users whose data is maintained within those systems, including but not limited to:

- Name, address, phone number, and email address;

---

[3] Vilius Petkauskas, *DoorDash, Walmart data manager breached, with millions of records exposed, attackers claim*, CYBERNEWS (Mar. 5, 2026), https://cybernews.com/security/shinyhunters-claims-woflow-data-breach/.

[4] *Use Cases*, WOFLOW, https://www.woflow.com/#use-cases-section (last visited Apr. 7, 2026).

[5] *Our Platform*, WOFLOW, https://www.woflow.com/#platform-section (last visited Apr. 7, 2026).

[6] Vilius Petkauskas, *DoorDash, Walmart data manager breached, with millions of records exposed, attackers claim*, CYBERNEWS (Mar. 5, 2026), https://cybernews.com/security/shinyhunters-claims-woflow-data-breach/.

- Date of birth;

- Social Security number;

- Demographic information;

- Financial Account information; and

- Driver's license or state or federal identification.

24.    Upon information and belief, Defendant has a privacy policy that is provided upon accepting services. Defendant represents in its Privacy Policy that it maintains security measures to protect personal information, stating: "We have organizational and technical processes and procedures in place to protect your personal information."[7] By collecting, storing, processing, and interacting with sensitive personally identifiable information through its platform and integrations with customer systems, Defendant represented that it would implement and maintain reasonable security measures designed to safeguard that information from unauthorized access, disclosure, or misuse.

25.    Defendant agreed to and undertook legal duties to maintain the protected personal information entrusted to it by customers for and on behalf of Plaintiff and Class members, and it promised to do so safely, confidentially, and in compliance with all applicable laws, including the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, and the California Online Privacy Protection Act.

26.    Yet, through its failure to properly secure the Private Information of Plaintiff and the Class, Defendant has not adhered to its own promises to protect individuals' information.

27.    The Private Information held by Defendant in its computer system and network included the highly sensitive Private Information of Plaintiff and Class members.

***The Data Breach***

28.    Upon information and belief, Defendant experienced a cyberattack on its computer systems by threat actor Shinyhunters on or around March 3, 2026.[8] The cybercriminals stated,

---

[7] *Privacy Policy*, WOFLOW, https://www.woflow.com/legal/privacy-policy (last visited Apr. 7, 2026).
[8] *Woflow, Inc.*, RANSOMEWARE.LIVE,
https://www.ransomware.live/id/V29mbG93LCBJbmMuQHNoaW55aHVudGVycw== (last visited Apr. 7, 2026).

"Several hundreds of millions of records containing PII, transaction/order data, other internal corporate data, and a lot more (you don't want us to say publicly) have been compromised."[9] While Shinyhunters did not identify an explicit ransom demand, it instructed Defendant to reach out to them by March 5, 2026, "before we leak along with several annoying (digital) problems that'll come your way."[10]

29.    Upon information and belief, as of the date of filing this Complaint, the required State Attorney Generals' notices have not been sent, nor have affected individuals received notice as to whether their Private Information was compromised in the Breach.

30.    Upon information and belief, Shinyhunters has disseminated the PII of affected individuals taken from Defendant's inadequately protected computer systems on the dark web.

31.    Upon information and belief, Defendant has not provided complimentary credit monitoring or identity theft protection services to Plaintiff and Class members whose sensitive Private Information was exposed in the Data Breach.

32.    Plaintiff and Class members provided their Private Information to Defendant and Defendant's clients with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

***The Data Breach Was a Foreseeable Risk for Which Defendant Was on Notice***

33.    It is well known that PII is a valuable commodity and a frequent, intentional target of cybercriminals. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

34.    Individuals place a high value not only on their PII, but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, including severe distress and hours of lost time trying to fight against the impact of identity theft.

---

[9] *Id.*
[10] *Id.*

- 7 -

35. A data breach increases the risk of becoming a victim of identity theft. Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice:

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[11]

36. In 2024, there were 3,158 data breaches recorded, similar to the 3,205 breaches reported in 2023. However, the number of victims affected jumped to 1.35 billion people, a 211% increase from 2023 to 2024.[12]

37. A report issued by Ivanti interviewed "more than 2,400 security leaders and found that the top predicted threat for 2025 is ransomware. According to the report, nearly 1 out of every 3 security professionals (38%) believe ransomware will become an even greater threat when powered by AI."[13] This is particularly alarming as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from businesses with a "lack of cybersecurity expertise and significant security resources."[14]

38. In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

---

[11] Erika Harrell, *Victims of Identity Theft*, 2018, U.S. DEPARTMENT OF JUSTICE BULLETIN at 9 (Apr. 2021), https://bjs.ojp.gov/document/vit18.pdf.

[12] *Identity Theft Resource Center's 2024 Annual Data Breach Report Reveals Near-Record Number of Compromises and Victim Notices*, IDENTITY THEFT RESOURCE CENTER (Jan. 28, 2025), https://www.idtheftcenter.org/post/2024-annual-data-breach-report-near-record-compromises/.

[13] Chuck Brooks, *Key Cybersecurity Challenges in 2025—Trends and Observations*, FORBES (Apr. 5, 2025), https://www.forbes.com/sites/chuckbrooks/2025/04/05/key-cybersecurity-challenges-in-2025-trends-and-observations/.

[14] *Id.*

39.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, prepared for, and hopefully can ward off a cyberattack. According to an FBI publication, "[r]ansomware is a type of malicious software—or malware—that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data."[15] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[16]

40.    Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgments of data security compromises, and its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

***At All Relevant Times, Defendant Had a Duty to Plaintiff and Class Members to Properly Secure Their Private Information***

41.    At all relevant times, Defendant had a duty to Plaintiff and Class members to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class members, and to promptly notify Plaintiff and Class members when Defendant became aware that their PII was compromised.

42.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class members.

43.    Security standards commonly accepted among businesses that store PII using the Internet include, without limitation:

    a.    Maintaining a secure firewall configuration;

---

[15] *Ransomware*, FEDERAL BUREAU OF INVESTIGATION, https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/ransomware (last visited Oct. 6, 2025).
[16] *Id.*

b. Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

c. Monitoring for suspicious or irregular traffic to servers;

d. Monitoring for suspicious credentials used to access servers;

e. Monitoring for suspicious or irregular activity by known users;

f. Monitoring for suspicious or unknown users;

g. Monitoring for suspicious or irregular server requests;

h. Monitoring for server requests for PHI;

i. Monitoring for server requests from VPNs; and

j. Monitoring for server requests from Tor Exit Nodes.

44. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[17] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[18]

45. The ramifications of Defendant's failure to keep Plaintiff's and Class members' PII secure are long-lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims including Plaintiff and the Class may continue for years.

*The Value of Personally Identifiable Information*

46. The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.[19]

---

[17] 17 C.F.R. § 248.201(b)(9).
[18] 17 C.F.R. § 248.201(b)(8).
[19] Anita George, *Your personal data is for sale on the dark web. Here's how much it costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

CLASS ACTION COMPLAINT

47.    Criminals can also purchase access to entire company's data breaches from $900 to $4,500.[20]

48.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, Senior Director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[21]

49.    PII can be used to distinguish, identify, or trace an individual's identity, such as their name and Social Security number. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[22]

50.    Given the nature of this Data Breach, it is foreseeable that the compromised PII can be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Class members' PII can easily obtain Class members' tax returns or open fraudulent credit card accounts in Class members' names.

51.    The Private Information compromised in this Data Breach is static and difficult, if not impossible, to change.

52.    Upon information and belief, as of the date of filing this Complaint, Defendant has yet to notify affected individuals about the Data Breach. Thus, the burden is placed on Plaintiff and Class members to determine whether their information was impacted and to monitor and report suspicious activities to law enforcement. In other words, Defendant seemingly expects Plaintiff and Class members to protect themselves from its tortious acts resulting in the Data Breach.

---

[20] *In the Dark*, VPN OVERVIEW, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 6, 2025).

[21] Tim Greene*, Anthem hack: Personal data stolen sells for 10x price of stolen credit card numbers*, NETWORK WORLD (Feb. 6, 2015), https://www.networkworld.com/article/935334/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[22] *Memorandum from Clay Johnson III, Deputy Director for Management, Office of Management and Budget, on Safeguarding Against and Responding to the Breach of Personally Identifiable Information*, n.1 (May 22, 2007), *available at* https://whitehouse.gov/wp-content/uploads/legacy_drupal_files/omb/memoranda/2007/m07-16.pdf.

53.    The injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the victims of its Data Breach.

***Defendant Failed to Comply with FTC Guidelines***

54.    Federal and state governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and financial institutions. The FTC has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[23]

55.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[24] The guidelines note businesses should protect the personal consumer and employee information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

56.    The FTC emphasizes that early notification to data breach victims reduces injuries, stating that "[i]f you quickly notify people that their personal information has been compromised, they can take steps to reduce the chance that their information will be misused" and "thieves who have stolen names and Social Security numbers can use that information not only to sign up for new accounts in the victim's name, but also to commit tax identity theft. People who are notified early can take steps to limit the damage."[25]

---

[23] *Start with Security*, FEDERAL TRADE COMMISSION (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[24] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business-0 (last visited Oct. 6, 2025).
[25] *Data Breach Response: A Guide for Business*, FEDERAL TRADE COMMISSION (Aug. 2023), https://www.ftc.gov/business-guidance/resources/data-breach-response-guide-business (last visited Oct. 6, 2025).

CLASS ACTION COMPLAINT

57.    The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[26]

58.    The FTC recommends that businesses[27]:

a.    Identify all connections to the computers where you store sensitive information.

b.    Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

c.    Do not store sensitive consumer data on any computer with an Internet connection unless it is essential for conducting their business.

d.    Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an Internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.    Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks.

f.    Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the Internet.

g.    Determine whether a border firewall should be installed where the business' network connects to the Internet. A border firewall separates the network from the Internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

[26] *See Start with Security, supra* note 23, at 11.
[27] *See Protecting Personal Information, supra* note 24.

59.   The FTC has brought enforcement actions against businesses for failing to protect employee and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60.   Because Class members entrusted Defendant with their PII, Defendant had, and continues to have, a duty to Plaintiff and the Class to keep their PII secure.

61.   Plaintiff and Class members reasonably expected that when they provided PII to Defendant (or to Defendant's customers), Defendant would safeguard their PII.

62.   Defendant was at all times fully aware of its obligation to protect the personal and financial data of its consumers, including Plaintiff and members of the Class. Defendant was also aware of the significant repercussions if it failed to do so.

63.   Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—including full names, street addresses, email addresses, phone numbers, and birthdates[28]—constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Concrete Injuries Were Caused by Defendant's Inadequate Security***

64.   Plaintiff and Class members reasonably expected that Defendant would provide adequate security protections for their PII, and Class members provided Defendant with sensitive Private Information.

65.   Defendant's poor data security deprived Plaintiff and Class members of the benefit of their bargain. Plaintiff and other individuals whose PII was entrusted with Defendant understood and expected that, as part of that business relationship, they would receive data security, when in fact

[28] *Woflow, Inc. Breach*, DATABREACH, https://databreach.com/breach/woflow-2026 (last visited Apr. 7, 2026). Because Defendant has not released any statements or notices to affected individuals regarding the Data Breach, Plaintiff and Class members cannot be sure exactly what Private Information of theirs was compromised in the Breach. The Private Information stolen in the Data Breach could additionally include, among other things, Social Security numbers, driver's license numbers, financial account details, and more.

Defendant did not provide the expected data security. Accordingly, Plaintiff and Class members received data security that was of a lesser value than what they reasonably expected. As such, Plaintiff and the Class members suffered pecuniary injury.

66.     Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Class members are now, and for the rest of their lives will be, at a heightened and substantial risk of identity theft. Plaintiff and Class members have also incurred (and will continue to incur) damages in the form of, inter alia, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

67.     The cybercriminals who obtained the Class members' PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained, at minimum, full names, street addresses, email addresses, phone numbers, and birthdates, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class member's name, including but not limited to:

      a.     Obtaining employment;

      b.     Obtaining a loan;

      c.     Applying for credit cards or spending money;

      d.     Filing false tax returns;

      e.     Stealing Social Security and other government benefits; and

      f.     Applying for a driver's license, birth certificate, or other public document.

68.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class members have been deprived of the value of their PII, for which there is a well-established national and international market.

69.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for fraudulent misuse of this information to be detected.

70.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the other Class members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. Moreover, there is a high likelihood that

significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class members' PII will do so at a later date or re-sell it.

71.    As a result of the Data Breach, Plaintiff and Class members have already suffered injuries, and each are at risk of a substantial and imminent risk of future identity theft.

***Data Breaches Put Victims at an Increased Risk of Fraud and Identity Theft***

72.    Data breaches, such as the one experienced by Plaintiff and the Class, are especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

73.    In 2019, the U.S. Government Accountability Office released a report addressing the steps consumers can take after a data breach.[29] Its appendix of steps consumers should consider, in simplified terms, continues for five pages. In addition to explaining specific options and how they can help, one column of the chart explains the limitations of the consumers' options.[30] It is clear from the GAO's recommendations that the steps data breach victims (like Plaintiff and the Class) must take after a breach like Defendant's are both time-consuming and of only limited and short-term effectiveness.

74.    The FTC, like the GAO, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[31]

75.    It must also be noted that there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when Private Information and/or

[29] *Data Breaches: Range of Consumer Risks Highlights Limitations of Identity Theft Services*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, Report No. GAO-19-230 (Mar. 2019) at 37-41, *available at* https://www.gao.gov/assets/gao-19-230.pdf (last visited Oct. 6, 2025).
[30] *Id.*
[31] *Identity Theft*, FEDERAL TRADE COMMISSION, https://consumer.ftc.gov/identity-theft-and-online-security/identity-theft (last visited Oct. 6, 2025).

financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[32]

76.     Private Information and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

77.     There is a strong probability that the entirety of the stolen information has been dumped on the dark web or will be dumped on the dark web, meaning Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class members must vigilantly monitor their financial and medical accounts for many years to come.

***Defendant Breached its Duties to Plaintiff and the Class***

78.     Defendant breached its obligations to Plaintiff and Class members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and Class members' data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.    Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

    b.    Failing to adequately protect Class Members' Private Information;

    c.    Failing to properly monitor its own data security systems for existing intrusions;

    d.    Failing to ensure that vendors with access to Defendant's data employed reasonable security procedures;

    e.    Failing to ensure the confidentiality and integrity of electronic Private Information it created, received, maintained, and/or transmitted;

---

[32] *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE, Report No. GAO-07-737 (June 2007) at 29, *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 6, 2025).

f.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic PII to allow access only to those persons or software programs that have been granted access rights;

g.    Failing to implement policies and procedures to promptly prevent, detect, contain, and correct security violations;

h.    Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports;

i.    Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic data;

j.    Failing to protect against reasonably anticipated uses or disclosures of electronic PII that are not permitted under the privacy rules regarding individually identifiable information;

k.    Failing to train all members of Defendant's workforce effectively on the policies and procedures regarding PII as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PII; and/or

l.    Failing to render the electronic PII it maintained unusable, unreadable, or indecipherable to unauthorized individuals.

79.    As the result of maintaining its computer systems in manner that required security upgrading, inadequate procedures for handling emails containing ransomware or other malignant computer code, and inadequately trained employees who opened files containing the ransomware virus, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class members' Private Information.

80.    Accordingly, as outlined above, Plaintiff and Class Members now face an increased risk of fraud and identity theft.

*Plaintiff Dominguez's Experience*

81.    Plaintiff Henry Dominguez is, and has been at all times relevant to this Complaint, a resident of the State of California, residing in Hemet.

82.    Upon information and belief, Plaintiff Dominguez's Private Information was compromised in the Data Breach through his online account with Walmart+, a platform that uses Defendant's services.

- 18 -
CLASS ACTION COMPLAINT

83.     On March 29, 2026, Plaintiff Dominguez discovered that his Walmart+ account was used earlier that day to make three fraudulent purchases totaling $5,793.44 on his OnePay credit card. Each of these purchases was set to be delivered to an address in Atlanta, Georgia that Plaintiff Dominguez did not recognize. Upon discovering this, Plaintiff immediately contacted OnePay to cancel his credit card and report the fraudulent activity and then contacted Walmart+ to report the same. Plaintiff then filed an identity theft report online and filed a report with his local law enforcement.

84.     Upon further investigation, Plaintiff discovered that the hacker blocked his text and email notifications from Walmart+ in an attempt to prevent him from discovering the fraudulent activity.

85.     Upon information and belief and conducting his own research, given the timing and details of the fraudulent activity Plaintiff experienced, Plaintiff believes that his information was compromised as a result of Defendant's Data Breach.

86.     In response to Defendant's Data Breach, Plaintiff has been and will continue to be required to spend time dealing with the consequences of the Data Breach, including time spent exploring credit monitoring and identity theft insurance options, and self-monitoring his accounts.

87.     Since the Data Breach, Plaintiff Dominguez has noticed an increase in spam calls and text messages.

88.     Immediately after experiencing the fraudulent activity on his Walmart+ account, Plaintiff Dominguez spent an appreciable amount of time evaluating his next steps including consulting with legal counsel, changing his passwords, and checking his financial accounts in an effort to mitigate the damage that has been caused by Defendant.

89.     Plaintiff Dominguez is very careful about sharing PII and has never knowingly transmitted unencrypted PII over the Internet or any other unsecured source.

90.     Plaintiff suffered actual injury and damages as a result of the Data Breach. Plaintiff would not have provided Defendant with his Private Information through his Walmart+ account had Defendant disclosed that it lacked data security practices adequate to safeguard it.

91.   Plaintiff Dominguez suffered actual injury in the form of damages and diminution in the value of his Private Information – a form of intangible property that he entrusted to Defendant through his Walmart+ account.

92.   Plaintiff suffered lost time, annoyance, interference, anxiety, and inconvenience as a result of the Data Breach, as well as increased concerns for the loss of his privacy.

93.   Plaintiff Dominguez reasonably believes that his Private Information may have already been sold to cybercriminals. Had he been notified of Defendant's Data Breach in a timely manner, he could have attempted to mitigate his injuries.

94.   Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen Private Information being placed in the hands of unauthorized third parties and possibly criminals.

95.   Plaintiff has a continuing interest in ensuring that his Private Information, which upon information and belief remains backed up and in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

96.   This action is brought by the named Plaintiffs on their behalf and on behalf of the proposed Class of all other persons similarly situated under Fed. R. Civ. P. 23(b)(2), (b)(3), and/or (c)(4).

97.   Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**All persons whose Private Information was compromised as a result of the Data Breach experienced by Woflow Inc. in March 2026 (the "Class").**

98.   Excluded from the proposed Class are Defendant's officers and directors, and any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from this Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

99.   Plaintiff reserves the right to amend the definition of the Class and/or add subclasses if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

CLASS ACTION COMPLAINT

100.    <u>Numerosity</u>. The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

101.    <u>Commonality</u>. Common questions of law or fact arising from Defendant's conduct exist as to all members of the Class, which predominate over any questions affecting only individual Class members. These common questions include, but are not limited to, the following:

a.    Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class members' Private Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.    Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e.    Whether Defendant owed a duty to Class members to safeguard their Private Information;

f.    Whether Defendant breached its duty to Class members to safeguard their Private Information;

g.    Whether computer hackers obtained Class members' Private Information in the Data Breach;

h.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i.    Whether Plaintiff and Class members suffered legally cognizable damages as a result of Defendant's misconduct;

j.    Whether Defendant's conduct was negligent;

k.    Whether Defendant's conduct was per se negligent;

l.    Whether Defendant's acts, inactions, and practices complained of herein amount to acts of intrusion upon seclusion under the law;

- 21 -

m.     Whether Defendant was unjustly enriched;

n.     Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

o.     Whether Plaintiff and Class members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

102.     Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach.

103.     Adequacy. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

104.     Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class members in that Plaintiff and Class members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

105.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant. In contrast, the

conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

106. Defendant has acted on grounds that apply generally to the Class as a whole so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

107. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class members' names and addresses affected by the Data Breach.

## CAUSES OF ACTION

### COUNT I
**Negligence**
***(On behalf of Plaintiff and the Class)***

108. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

109. Defendant required Plaintiff and Class members to submit (through its business customers, connected applications, or otherwise) non-public personal information in order to access, use, or interact with services supported by Defendant's platform.

110. By collecting and storing this data in Defendant's computer property, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard its computer property—and Class members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

111. Defendant owed a duty of care to Plaintiff and Class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

112. Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

113.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

114.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

    b.    Failing to adequately monitor the security of its networks and systems;

    c.    Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

    d.    Allowing unauthorized access to Class members' Private Information;

    e.    Failing to detect in a timely manner that Class members' Private Information had been compromised; and

    f.    Failing to timely notify Class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

115.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class members' Private Information would result in injury to Class members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in technology companies.

116.    It was therefore foreseeable that the failure to adequately safeguard Class members' Private Information would result in one or more types of injuries to Class members.

117.    Plaintiff and Class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

118.    Defendant's negligent conduct is ongoing, in that it still holds the Private Information of Plaintiff and Class members in an unsafe and unsecure manner.

119.   Plaintiff and Class members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all Class members.

**COUNT II**
**Intrusion Upon Seclusion / Invasion of Privacy**
*(On behalf of Plaintiff and the Class)*

120.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

121.   The State of California recognizes the tort of intrusion upon seclusion, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

RESTATEMENT (SECOND) OF TORTS § 652B (1977).

122.   Plaintiff and Class members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

123.   Defendant's conduct as alleged above intruded upon Plaintiff's and Class members' seclusion under common law.

124.   By intentionally failing to keep Plaintiff's and Class members' Private Information safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff's and Class members' privacy by:

    a.   Intentionally and substantially intruding into Plaintiff's and Class members' private affairs in a manner that identifies Plaintiff and Class members and that would be highly offensive and objectionable to an ordinary person;

    b.   Intentionally publicizing private facts about Plaintiff and Class members, which is highly offensive and objectionable to an ordinary person; and

    c.   Intentionally causing anguish or suffering to Plaintiff and Class members.

125.   Defendant knew that an ordinary person in Plaintiff's or Class members' position would consider Defendant's intentional actions highly offensive and objectionable.

126. Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by intentionally misusing and/or disclosing their Private Information without their informed, voluntary, affirmative, and clear consent.

127. Defendant intentionally concealed from and delayed reporting to Plaintiff and Class members a security incident that misused and/or disclosed their Private Information without their informed, voluntary, affirmative, and clear consent.

128. The conduct described above was at or directed at Plaintiff and the Class members.

129. As a proximate result of such intentional misuse and disclosures, Plaintiff's and Class members' reasonable expectations of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a substantial and serious invasion of Plaintiff's and Class members' protected privacy interests causing anguish and suffering such that an ordinary person would consider Defendant's intentional actions or inaction highly offensive and objectionable.

130. In failing to protect Plaintiff's and Class members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of damages and injunctive relief on behalf of themselves and the Class.

## COUNT III
### Violation of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### *(On behalf of Plaintiff and the Class)*

131. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

132. Defendant has violated the California Unfair Competition Law by engaging in unlawful, unfair, or fraudulent business acts and practices, and unfair, deceptive, untrue, or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §§ 17200 *et seq.* with respect to the services provided to the Class.

133. Defendant engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiff's and Class members' Private Information with knowledge that the information

would not be adequately protected; and by storing Plaintiff's and Class members' Private Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Defendant to take reasonable methods of safeguarding the Private Information of Plaintiff and the Class.

134.    In addition, Defendant engaged in unlawful acts and practices by failing to disclose the Data Breach in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82 and Cal. Health & Safety Code § 1280.15(b)(2).

135.    As a direct and proximate result of Defendant's unlawful practices and acts, Plaintiff and Class members were injured and lost money or property, including but not limited to the price received by Defendant for the services, the loss of Plaintiff's and Class members' legally protected interest in the confidentiality and privacy of their Private Information, nominal damages, and additional losses as described herein.

136.    Defendant knew or should have known that Defendant's computer systems and data security practices were inadequate to safeguard Plaintiff's and Class members' Private Information and that the risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class members.

137.    Plaintiff, on behalf of the Class, seeks relief under Cal. Bus. & Prof. Code §§ 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and Class members of money or property that Defendant may have acquired by means of Defendant's unlawful and unfair business practices, restitutionary disgorgement of all profits accruing to Defendant because of Defendant's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**COUNT IV**
**Violation of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code §§ 1798.80, *et seq.***
*(On behalf of Plaintiff and the Class)*

138.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

139.    Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . .".

140.    The CCPA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

141.    The Data Breach described above constituted a "breach of the security system" of Defendant, within the meaning of Civil Code § 1798.82(g).

142.    The information lost in the data breach constituted "personal information" within the meaning of Civil Code § 1798.80(e).

143.    Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Breach.

144.    Defendant unreasonably delayed informing anyone about the Breach after Defendant knew the Breach had occurred. In fact, upon information and belief, Defendant has still not notified affected individuals about the Breach as of the date of filing this Complaint, despite being aware of the Breach since at least early March 2026.

145.    Defendant failed to disclose to Class members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII, when they knew or reasonably believed such information had been compromised.

146.    Upon information and belief, no law enforcement agency instructed Defendant that notification to Class Members would impede investigation.

147.    As a result of Defendant's violation of Civil Code §§ 1798.80, *et seq.*, Plaintiff and other Class members incurred economic damages, including expenses associated with necessary credit monitoring.

148.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and Class members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

149.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and Class members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

150.    Plaintiff and Class members seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to, the damages suffered by Plaintiff and Class members as alleged above and equitable relief.

151.    Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and Class members of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and Class members and despicable conduct that has subjected Plaintiff and Class members to hardship in conscious disregard of their rights. As a result, Plaintiff and Class members are entitled to punitive damages against Defendant under Cal. Civ. Code § 3294(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enters judgment in his favor on every claim for relief set forth above and awards him relief including, but not limited to, the following:

A.    An Order appointing Plaintiff to represent the Class pursuant to FRCP 23(a) and designating Plaintiff's counsel as Class Counsel;

B.     For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class members;

C.     For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

D.     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.     Ordering Defendant to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

F.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

G.     For an award of punitive damages, as allowable by law;

H.     For an award for Plaintiff for the costs of suit and reasonable attorneys' fees and costs, and any other expense, including expert witness fees, as provided by law;

I.     Pre-and post-judgment interest on any amounts awarded; and

J.     Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Class, hereby respectfully demands a trial by jury of all issues triable by right.


Dated: April 9, 2026                                    Respectfully submitted,

                                                        /s/ Robert Mackey, Esq.

                                                        Robert Mackey (SBN 125961)
                                                        *bobmackeyesq@aol.com*
                                                        **LAW OFFICES OF ROBERT MACKEY**
                                                        16320 Murphy Road
                                                        Sonora, CA 95370
                                                        Tel: (412) 370-9110

                                                        Jane Manwarring, Esq.*
                                                        *jmanwarring@classlawdc.com*
                                                        **MIGLIACCIO & RATHOD, LLP**
                                                        412 H Street N.E., Suite 302
                                                        Washington, D.C. 20002
                                                        Tel: (202) 470-3520

                                                        * *pro hac vice anticipated*

                                                        *Attorneys for Plaintiff & the Putative Class*